UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WESLEY WILLIAMS,<br>CDCR # V-34099,<br><br>                              Plaintiff,<br><br>v.<br><br>WARDEN M. POLLARD, et al.,<br><br>                              Defendants. | Case No.:  21cv0055-CAB (BGS)<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS,**<br><br>**(2) DISMISSING ALL DEFENDANTS EXCEPT DEFENDANT POLLARD, and**<br><br>**(3)  GRANTING PLAINTIFF LEAVE TO AMEND OR TO PROCEED ONLY AGAINST DEFENDANT POLLARD** |

Plaintiff John Wesley Williams is proceeding *pro se* and *in forma pauperis* with a First Amended Complaint ("FAC") pursuant to 42 U.S.C. § 1983.  (ECF No. 19.)  He alleges he has pre-existing health conditions which place him at a heightened risk of death or severe illness if infected with the Covid-19 virus, and that while incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, Defendants were deliberately indifferent to his risk of exposure to the virus in violation of the Eighth Amendment by providing poor quality masks to inmates and RJD staff which were not

always worn, housing an inmate who tested positive for the virus in his cell, failing to properly sanitize the housing unit or enforce social distancing guidelines, and failing to separate inmates who tested positive for Covid-19.  (*Id*. at 2-14.)  He seeks monetary damages and an injunction preventing him from being housed under conditions which create an imminent danger of exposure to Covid-19.  (*Id*. at 15.)

Currently pending is a Motion to Dismiss the FAC filed by Defendants RJD Warden Pollard, RJD Associate Warden Phillips, and RJD Facility Captain Garcia, which has been joined by Defendants RJD Chief Deputy Warden Buckel, RJD Correctional Sergeant Hampton, and RJD Correctional Officers Lachuga and Sanchez.  (ECF Nos. 21, 35.) Defendants contend that: (1) Plaintiff's claim of injury is speculative because there is currently a minimum risk of contracting Covid-19 since RJD has only two active cases and 82% of inmates have been fully vaccinated; (2) there are no allegations any Defendant acted maliciously or sadistically as required to satisfy the subjective prong of an Eighth Amendment violation; (3) Plaintiff does not have standing and the Court lacks subject matter jurisdiction because no injury in fact has been alleged since Plaintiff has not alleged he has contracted Covid-19; (4) Plaintiff's claim for injunctive relief is moot because conditions have improved at RJD so that an outbreak of Covid-19 like the one the FAC is premised on is unlikely and because it duplicates efforts in ongoing class actions; and (5) Plaintiff's claim for damages is foreclosed by 42 U.S.C. § 1997e(e) which requires physical injury before monetary damages can be awarded.  (*Id*. at 11-20.)

Plaintiff has filed an Opposition contending that: (1) current conditions at RJD do not moot his damages claim based on actions beginning in July 2020, (2) his claims do not duplicate the challenge to the California Department of Corrections and Rehabilitation ("CDCR") healthcare system in ongoing class action lawsuits, and (3) the risk of infection has not passed because he has not been vaccinated, new strains of the virus are emerging, and Defendants have not presented "verifiable evidence" regarding vaccinations.  (ECF No. 29 at 1-10.)  Defendants reply that there are currently no Covid-19 cases among inmates at RJD and 85% of inmates are vaccinated.  (ECF No. 30 at 1-3.)

As set forth herein, the Court **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss, **DISMISSES** all claims against all Defendants in the FAC with the exception of Plaintiff's Eighth Amendment claim against Defendant Warden Pollard, and **GRANTS** Plaintiff leave to amend the FAC or, if he chooses, to proceed with his claim against Defendant Warden Pollard only.[1]

## I.    Procedural History

Plaintiff initiated this action by filing a *pro se* civil rights Complaint on January 1, 2021, accompanied by an application to proceed *in forma pauperis*, naming as Defendants RJD Warden Pollard, RJD Associate Wardens Phillips and Lewis, and RJD Facility Captain Garcia.  (ECF Nos. 1-2.)  On May 5, 2020, the Court granted Plaintiff leave to proceed *in forma pauperis*, screened the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and directed service as to all four Defendants.  (ECF No. 4.)

On May 28, 2021, Defendants filed a motion to dismiss the Complaint.  (ECF No. 12.)  Plaintiff filed the FAC on August 24, 2021, dropping Defendant Lewis but adding Defendants Buckel, Hampton, Lachuga and Sanchez.  (ECF No. 19.)  Defendants withdrew their motion to dismiss the original Complaint and filed the instant motion to dismiss the FAC on September 7, 2021.  (ECF No. 21.)  Plaintiff filed an opposition on September 17, 2021 (ECF No. 29), and Defendants filed a Reply on October 19, 2021.  (ECF No. 30.)  The five the new Defendants, except Defendant Navarro, joined the motion to dismiss after they were served with the summons and FAC.  (ECF No. 35.)  Defendant Navarro has apparently not been served with the FAC.

## II.    Allegations in the FAC

Plaintiff alleges he is a participant in the CDCR Mental Health Services Enhanced Outpatient Unit ("EOP"), which he states is a special program for gravely mentally

---

[1] Although this matter was referred to United States Magistrate Judge Bernard G. Skomal pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that a Report and Recommendation is not necessary.  *See* S.D. Cal. Civ.L.R. 72.1(d).

disabled prisoners unable to care for themselves in a general prison population setting. (ECF No. 19 at 4.)  In June or July 2020, he filed an inmate grievance stating he has pre-existing health conditions which increase his risk of death if infected by the Covid-19 virus, which includes pre-diabetes, obesity, high blood pressure and respiratory issues requiring a CPAP machine to sleep, but the grievance did not receive a response.  (*Id*.)  He complained in that grievance that the poor quality of face masks issued by Defendants Warden Pollard, Chief Deputy Warden Buckel, Associate Warden Phillips and Facility Captain Garcia did not adequately protect him from exposure to the virus, and the risk of exposure was increased by poor maintenance and sanitation of his housing unit, forced double celling of inmates in small cells in violation of social distancing health orders, and the failure of correctional officers to wear face masks while inside the housing unit.  (*Id*. at 4-5.)  He alleges that under CDCR policies and procedures his grievance should have been forwarded to Defendants Pollard, Buckel or Phillips, who should have "delegated" it to Defendant Garcia "to assign a subordinate to address" it, who was required to return it to Pollard, Buckel or Phillips to sign before returning it to Plaintiff.  (*Id*. at 5.)  However, in order "to avoid redress of meritorious issues raised," those Defendants "never addressed or provided timely response to Plaintiff's grievance, and never interviewed Plaintiff in response to the grievance as required by defendant's own policy and procedures outlined" in California Code of Regulations, Title 15, § 3084.7(e).  (*Id*. at 5-6.)

Plaintiff alleges that as a direct result of the failure of Defendants Pollard, Buckel, Phillips and Garcia to address the concerns raised in his grievance, "between July and November 2020, a totality of the described deprivations caused on ongoing and massive outbreak of Covid-19 infections within Plaintiff's immediate housing area."  (*Id*. at 6.)  He claims that "despite being well aware of dozens of prisoners with positive Covid-19 test results since as early as December 2020," these Defendants "failed and refused to separate infected prisoners from non-infected prisoners" who used common showers, drinking fountains, meal service, laundry and telephones without cleaning between uses, all of which resulted in widespread Covid-19 infections in his housing area.  (*Id*. at 6-7.)  Plaintiff

alleges he suffered panic anxiety attacks which were brought on by stress and distress from the fear of inadequate protections, which caused migraine headaches, muscle cramps, sleep deprivation, and severe indigestion with stomach pain and discomfort. (*Id*. at 7.)

Plaintiff alleges that on December 24, 2020, at the height of the Covid-19 outbreak at RJD, while housed alone in a single cell, Defendant Correctional Officer Navarro brought an inmate named Washington who had a confirmed Covid-19 infection to Plaintiff's cell and threatened to move Plaintiff into the Administrative Segregation Unit ("AdSeg") and issue him a Rules Violation Report ("RVR") if he did not agree to double cell with inmate Washington. (*Id*. at 7-8.) Even though inmate Washington told Defendant Navarro he was infected with the virus, Navarro housed them together. (*Id*. at 8.) The following morning, when housing unit nurses discovered the situation, inmate Washington was "medically removed" from Plaintiff's cell while Plaintiff was ordered into quarantine, which reenforced and intensified his panic anxiety attacks, migraine headaches, muscle cramps, sleep deprivation, and severe indigestion with stomach pain and discomfort. (*Id*.) On December 29, 2020, Plaintiff filed an inmate grievance regarding Defendant Navarro's actions, to which Defendant Pollard personally replied by stating that inmate Washington had been medically cleared prior to his placement with Plaintiff. (*Id*. at 9, 19.)

Plaintiff states that building A1 is an EOP housing unit, yet Defendants Pollard, Buckel, Phillips and Garcia designated certain cells in housing unit A1 as quarantine cells for prisoners infected with Covid-19. (*Id*. at 10.) On July 20, 2021, Defendant Correctional Officer Lachuga came to Plaintiff's cell to advise him he was being rehoused in A1-108 in quarantine, but Plaintiff refused to be moved because he was not Covid-19 positive and did not exhibit any symptoms. (*Id*.) Defendant Lachuga told Plaintiff he would be placed in AdSeg and issued and RVR if he refused to move, an action "authorized" by Defendant Correctional Sergeant Hampton. (*Id*.) While Plaintiff was moving to cell A1-108 he confronted Defendant Hampton about "being bullied, threatened, and forced to rehouse in conditions which increase the risk of Covid-19 infection." (*Id*.) Defendant Hampton told Plaintiff he would be tested the next day and if he tested negative he would be moved back.

(*Id.*)   He tested negative the next day, July 21, 2021.   (*Id.*)   Plaintiff complained to Defendants Lachuga and Correctional Officer Sanchez that the walls in cell A1-108 "were peppered with dried substances and fluids from previous Covid-19 positive prisoners held [there] in quarantine," but they ignored his concern and his request to return to cell A2-147 as promised.  (*Id.* at 10-11.)  The next day, July 22, 2021, Plaintiff began "feeling symptoms of chest pains from breathing and loss of taste and smell as direct result of being forced housed in quarantine cell A1-108."  (*Id.*)

The FAC presents a single claim for deliberate indifference to Plaintiff's serious medical need to be protected from exposure to the Covid-19 virus in violation of the Eighth Amendment.  Attached as exhibits are the 602 grievances and a July 13, 2021, declaration signed by himself and six other inmates stating that CDCR officials are "telling complete lies to the courts when they are saying there is no more Covid-19 cases around here."  (*Id.* at 30.)  Plaintiff seeks an injunction preventing "ongoing deliberate indifference towards exposure to Covid-19 which create imminent danger conditions," and compensatory, exemplary, prospective, special and punitive money damages.  (*Id.* at 15.)

## III.   Defendants' Motion to Dismiss

Defendants contend that: (1) Plaintiff's allegation he is at risk of contracting Covid-19 is speculative, as there is currently a minimum risk since RJD has only two active cases and 82% of inmates have been fully vaccinated; (2) there are no allegations any Defendant acted maliciously and sadistically as necessary to plausibly allege the subjective prong of an Eighth Amendment violation; (3) Plaintiff does not have standing and this Court lacks subject matter jurisdiction because he has not alleged an injury in fact as he has not contracted Covid-19; (4) Plaintiff's claim for injunctive relief is moot because conditions have improved at RJD so that an outbreak of Covid-19 like the one the FAC is premised on is unlikely and because it duplicates efforts in an ongoing class actions; and (5) Plaintiff's claim for damages is foreclosed by 42 U.S.C. § 1997e(e) which requires physical injury before monetary damages can be awarded.  (ECF No. 21 at 11-20.) Defendants have filed a request to take judicial notice of the following facts: (1) as of the

date of the filing of the motion, September 7, 2021, there were only two active Covid-19 cases among inmates at RJD, and 82% of inmates there are fully vaccinated, (2) a federal receiver has been appointed to take control of CDCR's provision of medical services to inmates in *Brown v. Plata*, 563 U.S. 493 (2011) and *Coleman v. Brown*, 938 F.Supp.2d 955 (E.D. Cal. 2013), (3) the *Plata* receiver has implemented state-wide guidelines intended to "mitigate the risks associated with the transmission" of Covid-19 within the prison population which specifically address inmates with high-risk medical conditions and mental health issues like Plaintiff, and (4) the *Plata* and *Brown* courts are currently monitoring implementation of those guidelines.  (*Id*. at 10-11; ECF No. 21-1.)

Plaintiff argues in his Opposition that Defendants' Motion to Dismiss relies "on actions and reactions which are not relevant to the time the deprivations are claimed in this lawsuit," as their contention that conditions have improved does not moot his claim for damages regarding their actions beginning in July 2020, and with respect to the December 2020 outbreak of Covid-19.  (ECF No. 29 at 1, 3-5.)  He contends their reliance on ongoing class action lawsuits is immaterial because his claims here do not duplicate the general challenge to the CDCR healthcare system in those lawsuits.  (*Id*. at 2-3.)  He contends he has sufficiently alleged both the subjective and objective prongs of an Eighth Amendment violation, presents an additional factual allegation that he was told by RJD Health Care Appeals Registered Nurse Feller-Sazon that inmate Washington had not been medically cleared for double celling and should never have been double-celled with him, and indicates an intention of amending the FAC to include that allegation and a claim based on being double-celled with Washington.  (*Id*. at 6-8.)  He attaches his own declaration dated September 14, 2021, stating that he has not been vaccinated, that the risk of infection at RJD has not passed due to possible exposure to new strains of the virus, that Defendants have not presented "verifiable evidence" regarding vaccination by prison staff and officials, and have not contradicted Plaintiff's evidence that he was improperly double-celled with inmate Washington at a time when Washington had tested positive and Plaintiff had not.  (*Id*. at 9-10.)

Defendants reply that Plaintiff admits he has not contracted Covid-19 and has therefore failed to suffer any actual injury from the events alleged in the FAC and cannot establish standing or satisfy 42 U.S.C. § 1997e(e).  (ECF No. 30 at 1-2.)  They argue he is not in imminent danger of exposure to Covid-19 because as of the date of the Reply, October 19, 2021, there are currently no Covid-19 cases among inmates at RJD and 85% of inmates are vaccinated.  (*Id*. at 1-3.)

### 1. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  The factual allegations must rise above the mere conceivability or possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678-79.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009), quoting *Iqbal*, 556 U.S. at 678.

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights."

*Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted).  In order to state a § 1983 claim, Plaintiff must plausibly allege that (1) the acts of Defendants (2) taken under color of state law (3) deprived him of his federal rights, privileges or immunities and (4) caused him damage.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005).  Plaintiff must allege he suffered a specific injury as a result of a Defendant's action and an affirmative link between the injury and the Defendant's conduct.  *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).

The Eighth Amendment's cruel and unusual punishments clause is violated when prison officials are deliberately indifferent to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 102-05 (1976).  To establish deliberate indifference, a prisoner must allege facts from which a trier of fact might reasonably conclude that the treatment he received placed him at risk of "objectively, sufficiently serious" harm, and that a prison official had a "sufficiently culpable state of mind" when they provided or denied medical care.  *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995).  Plaintiff must show Defendants knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

## 2.    Standing/Jurisdiction

Defendants contend Plaintiff lacks standing to bring this action and the Court lacks subject matter jurisdiction over it because: (1) Plaintiff has not alleged an injury in fact since he has not contracted Covid-19, and his concern about possibly being infected with the virus is speculative, and (2) his claim for injunctive relief is moot and he cannot seek damages absent a showing of physical injury.  (ECF No. 21 at 15-16.)  Plaintiff argues in opposition that current conditions at RJD are not relevant to the Defendants' action beginning in July 2020 and with respect to the December 2020 outbreak of Covid-19 at

RJD, and provides his own declaration dated September 14, 2021, stating that he has not been vaccinated, the risk of infection at RJD has not passed due to possible exposure to new strains of the virus, and arguing that Defendants have not presented "verifiable evidence" regarding vaccination by prison staff and officials.  (ECF No. 29 at 1-6, 9-10.)  Defendants reply that Plaintiff admits he has not contracted Covid-19 and argue he is not in imminent danger of exposure to Covid-19 because there are currently no Covid-19 cases among inmates at RJD and 85% of inmates are vaccinated.  (ECF No. 30 at 1-3.)

In order to have Article III standing to bring this lawsuit, Plaintiff must adequately allege he has suffered an "injury in fact" which is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  It must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 561.  In *Helling v. McKinney*, 509 U.S. 25 (1993), where the plaintiff complained of exposure to second-hand tobacco smoke, the Court found that "a remedy for unsafe conditions need not await a tragic event," and that it would be "odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition on the ground that nothing yet had happened to them." *Id*. at 33.  There appears to be a nation-wide consensus among district courts that inmates seeking injunctive relief to be protected from exposure to Covid-19, in particular inmates like Plaintiff who have pre-existing health issues which heighten the risks associated with the virus, satisfy the standing and redressability requirements of Article III, "even when there is no evidence that a particular detention facility has detected a confirmed case of the virus." *See Bent v. Barr*, 445 F.Supp.3d 408, 414-15 (N.D. Cal. 2020) (collecting cases and stating that "[m]ost of these cases rely on *Helling v. McKinney*, where the Supreme Court observed that 'it would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.'")  In any case, Plaintiff has in fact alleged something has happened to him, he was doubled-celled with an infected inmate at a time he was not infected with the virus and began "feeling symptoms of chest pains from breathing and loss of taste and smell." (ECF No. 19 at 11.)  That is in addition

to his claim of ongoing panic anxiety attacks, migraine headaches, muscle cramps, sleep deprivation, and severe indigestion with stomach pain and discomfort.  (*Id*. at 7-8.)

Defendants argue that the lack of a current ongoing risk of Covid-19 exposure at RJD distinguishes *Helling* and its progeny.  (ECF No. 21 at 11-13.)  Their contention that Plaintiff admits he has not been infected with Covid-19 is based on his failure to allege he has been infected and his negative Covid-19 test.[2]  (*See id*. at 8.)

Plaintiff has alleged he is vulnerable to death or severe illness from Covid-19 due to pre-existing medical issues, has alleged he is unnecessarily exposed to the virus by the failure of the Defendants to follow their own guidelines for protecting inmates, such as wearing masks, socially distancing, separating infected inmates from uninfected inmates, including himself on one occasion, has alleged ongoing emotional and physical effects from that failure including panic anxiety attacks, migraine headaches, muscle cramps, sleep deprivation, and severe indigestion with stomach pain and discomfort, and it is not speculative to say that enjoining Defendants from a continued failure to follow those guidelines and awarding money damages will redress his injuries, provided he can prove they arise from a constitutional violation.  Accordingly, Plaintiff has alleged he has suffered and continues to suffer actual or imminent injuries and that it is likely, rather than merely speculative, they can be redressed by a favorable decision in this case.  He has satisfied Article III's injury in fact standing requirement.  *Lujan*, 504 U.S. at 560-61.

Defendants also contend the Court lacks subject matter jurisdiction over this action because Plaintiff's claim for injunctive relief is moot because there is no current risk of

---

[2]  The response to Plaintiff's December 17, 2020, health care grievance indicates he refused to be tested for Covid-19 on January 11, 2021, and refused to receive the Covid-19 vaccine on February 3, 2021.  (ECF No. 29 at 21.)  That document, and Plaintiff's allegation he tested negative the day before he began to exhibit symptoms consistent with Covid-19 after he was housed with an infected inmate and in the quarantine cell, appears to constitute the only indication in the record regarding whether or not he has been infected with Covid-19.  Defendants' contention Plaintiff admits he has not been infected appears to lack support in the record, although such a determination is not required to resolve the motion to dismiss.

exposure to the Covid-19 virus at RJD and it is duplicative of ongoing class actions, and because he is unable to bring a claim for damages as he has not suffered a physical injury within the meaning of 42 U.S.C. § 1997e(e).  Plaintiff seeks to enjoin Defendants "from ongoing deliberate indifference towards exposure to Covid-19 which create imminent danger conditions."  (ECF No. 19 at 15.)  The request for injunctive relief could be moot if Plaintiff is no longer housed under the conditions complained of, such as having been transferred or released.  However, Defendants admit that the *Plata* and *Brown* courts are currently monitoring implementation of safety guidelines system wide, suggesting that the threat of exposure to the virus is ongoing.  *See Walker v. Beard*, 789 F.3d 1125, 1132 (9th Cir. 2015) (recognizing that a prisoner's claim was not moot where "the policy pursuant to which the alleged violation occurred was 'system wide' and one of the defendants was in charge of the policy."); *Helling*, 509 U.S. at 33 ("[A] remedy for unsafe conditions need not await a tragic event.")

Defendants have not shown that Plaintiff's injunctive relief claim is rendered moot by the ongoing class action litigation.  *See Pride v. Correa*, 719 F.3d 1130 (9th Cir. 2013) (holding that plaintiff can maintain a claim for injunctive relief concerning individual medical care only where the "claim is not already encompassed in the *Plata* litigation, which seeks systemic reform of medical care in California prisons."); *see also Burnett v. Dugan*, 618 F.Supp.2d 1232, 1235-37 (S.D. Cal. 2009) (taking judicial notice of the *Plata* litigation and rejecting defendant's contention that plaintiff is automatically precluded from seeking injunctive relief for his own medical treatment without first seeking relief as a member of the *Plata* class).  The Court grants Defendants' request to take judicial notice of an April 17, 2020, Order by Judge Tigar in *Plata* (*see Plata v. Newsom*, 445 F.Supp.3d 557, 569 (N.D. Cal. Apr. 17, 2020)), detailing the steps the CDCR has taken for high-risk medical inmates like Plaintiff in response to Covid-19, issued before the June 2020 beginning of the events alleged in the FAC here, and stating that: "The pandemic presents an ongoing public health emergency, and the virus's presence within the prisons requires continuous, evolving efforts by Defendants, as well as ongoing monitoring by the Court.

. . . And with regard not only to physical distancing, but to the medical response to COVID-19 generally, Defendants unquestionably have the power to take additional actions, and this Court strongly encourages them to do so."  (ECF No. 21-2 at 22-23.)  The Court also grants the request to take judicial notice of the April 10, 2020, memorandum from the *Plata* receiver identifying which protection protocols the CDCR "should implement . . . in their ongoing efforts to mitigate the risks associated with transmission of the COVID-19 coronavirus" (*Id*. at 28-19), as well as the receiver's April 27, 2021, memorandum identifying where updated protocol recommendations can be found.  (*Id*. at 33.)

The ongoing efforts to monitor implementation of the receiver's recommended protection protocols for the *Plata* class do not moot Plaintiff's claim for injunctive relief here because, as set forth below, the only remaining Defendant in this action is Warden Pollard, and the allegation against him is that he personally and falsely denied Plaintiff's 602 inmate grievance on a pretext to conceal the fact that Plaintiff was placed in a cell with an infected inmate at a time when Plaintiff was not infected, and to conceal the risks associated with failures to follow Covid-19 safety protocols at RJD.  Defendants have shown on this motion to dismiss that protection protocols have been and continue to be developed for use in CDCR institutions by the receiver, and that the court monitoring their implementation has, prior to the events alleged in the FAC, approved of their efforts so far and has strongly encouraged them to take additional actions.  Defendants have not shown that the claim against Warden Pollard in this action, alleging a deliberate refusal to follow safety guidelines at RJD even when faced with the knowledge that it has resulted in inmate deaths and in Plaintiff being housed with an infected inmate, and an attempt to conceal those actions by falsely claiming inmate Washington was medically cleared to be housed with Plaintiff, is encompassed in the ongoing class actions.  *See Pride*, 719 F.3d at 1133-34 (noting that Rule 12(b)(6) permits dismissal of "those portions of (the) complaint which duplicate the (class action's) allegation and prayer for relief," but not "those allegations of (the) complaint which go beyond the allegations and relief prayed for in (the class action.)"), quoting *Crawford v. Bell*, 599 F.2d 890, 892-93 (9th Cir. 1979).

21cv0055-CAB (BGS)

As to Plaintiff's claim for damages, inmates are generally barred from pursuing claims for mental and emotional injuries if they suffered no physical injury.  *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).")  "[T]he requisite physical injury must be more than *de minimis*."  *Oliver v. Keller*, 289 F.3d 629, 628 (9th Cir. 2002).  As described above, Plaintiff has alleged he has suffered emotional *and* physical effects from the Defendant's failure to follow safety protocols, including panic anxiety attacks, migraine headaches, muscle cramps, sleep deprivation and severe indigestion with stomach pain and discomfort, and that after spending the night in quarantine cell with walls peppered with dried substances and fluids from previous Covid-19 positive prisoners held there in quarantine he began to exhibit "symptoms of chest pains from breathing and loss of taste and smell."  (ECF No. 19 at 7-8, 11.)  Even to the extent his injuries are *de minimis*, his claim for punitive damages (*see id*. at 15), is sufficient to satisfy 42 U.S.C. § 1997e(e).  *See Oliver*, 289 F.3d at 630 (holding that "§ 1997e(e) applies only to claims for mental and emotional injury" and does not bar claims for punitive and nominal damages which remain available to redress constitutional violations even in the absence of more than *de minimis* physical injury).

Accordingly, the Court **DENIES** Defendants' motion to dismiss for lack of standing and lack of subject matter jurisdiction.

### 3.    Failure to State a Claim

Defendants contend Plaintiff has not stated a 42 U.S.C. § 1983 claim for relief because the FAC merely alleges that: (1) Defendants Pollard, Buckel, Phillips and Garcia failed to respond to Plaintiff's inmate grievances, (2) Defendant Hampton asked Plaintiff to quarantine after he shared a cell with an infected inmate, (3) Plaintiff complained to Defendants Sanchez and Lechuga of the conditions in his quarantine cell but without allegations regarding what they did or did not do about his complaint, and (4) Defendant Navarro celled Plaintiff with an infected inmate for a single night which did not result in

Plaintiff contracting the Covid-19 virus.  (ECF No. 21 at 13-14.)  They argue that recent district court decisions have concluded that a failure of prison staff to comply with Covid-19 guidelines, without more, does not satisfy the subjective prong of an Eighth Amendment claim, which they contend requires allegations the Defendants acted "maliciously and sadistically for the very purpose of causing harm." [3]  (*Id.*)

Plaintiff replies that he placed Defendants Pollard, Phillips and Garcia, and former Defendant Lewis, on notice that the conditions at RJD were as claimed in the FAC (poor quality face masks were issued and rarely worn which did not adequately protect him from exposure to the virus, and the exposure was increased by poor maintenance and sanitation of his housing unit, forced double celling of inmates in small cells in violation of social distancing health orders and the failure of correctional officers to wear face masks while inside the housing unit), through his 602 inmate grievance log no. 18723 filed on July 6, 2020, attached to his Opposition as Exhibit A.  (ECF No. 29 at 2-4, 12-14.)  He contends those Defendants failed to timely reply to that grievance in violation of their own timeliness requirements, and that the December 2020 Covid-19 outbreak occurred at RJD while the grievance was pending and the response overdue, resulting in several inmate deaths which could have been prevented had these Defendants acted on his grievance.  (*Id.* at 4-5.)  He contends that on December 24, 2020, at the height of the outbreak, "in an ongoing callous disregard" for his health and safety, he was forced by threat of disciplinary action to double

---

[3]  The subjective prong of an Eighth Amendment violation requires a showing defendants acted maliciously or sadistically to cause harm only where prison officials are accused of use of excessive force, not, as here, where they allegedly failed to protect a prisoner. *Compare Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) ("[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)], whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."), *with Farmer*, 511 U.S. at 837 (holding that the mental state of deliberate indifference is equivalent to that of "reckless disregard," which requires a showing the prison official "know[s] of and disregard[s] and excessive risk to inmate health and safety.")

cell with inmate Washington, who was "recorded as positive for the Covid-19 virus." (*Id.* at 5.)  After he submitted a December 29, 2020, 602 inmate grievance in response to being celled with inmate Washington, Defendant Warden Pollard "provided a late response on January 26, 2021, which Plaintiff did not receive until May 12, 2021, which is attached to the Opposition as Exhibit B (*id.* at 16-19), and the FAC as Exhibit A (ECF No. 19 at 19-21), which Plaintiff contends shows that Warden Pollard "defend[ed] the described practice by fabricating to conceal such." (ECF No. 29 at 5-6.)  The response denying that grievance states that: "Staff conducted thorough reviews of [Plaintiff's] and Inmate Washington's confidential Medical Classification Chrono's (MCC) utilizing the Strategic Offender Management System (SOMS).  As a result, Inmate Washington's MCC was clear and [he] was housed appropriately."  (*Id.* at 17.)  Plaintiff claims that is false because on February 23, 2021, he was interviewed by RJD Health Care Appeals Registered Nurse Feller-Sazon in connection to his December 17, 2020, health care grievance log no. RJD-HC-2002135, attached as Exhibit C to his Opposition (*id.* at 21-32), and was told by Feller-Sazon that "inmate Washington should have never been housed in double cell living until cleared by medical, and on December 24, 2020, inmate Washington was not clear for double cell housing due to Covid-19." (*Id.* at 6.)

Plaintiff states in his own declaration that as of September 14, 2021, he has not been vaccinated, that the risk of infection at RJD has not passed due to possible exposure to new strains of the virus, that Defendants have not presented "verifiable evidence" regarding vaccination by prison staff and officials and have not contradicted Plaintiff's evidence that he was improperly double celled with an infected inmate.  (*Id.* at 9-10.)  In addition, the July 13, 2021, declaration attached to the FAC and signed by himself and six other inmates states: "CDCR OFFICIALS are in fact telling complete lies to the COURTS, when they are saying there is no more COVID-19 cases around here, they're still putting other human life in 'Imminent' 'Danger,' by using Building one as a dumping ground for COVID-19 infected inmates creating an 'unsafe' 'environment' for inmates and staff as well, after omitting the rapid spread of this deadly VIRUS COVID-19."  (ECF No. 19 at 30.)

Defendants reply that Plaintiff admits he has not contracted Covid-19 and argue he is not in imminent danger of exposure to Covid-19 because as of the date of the Reply, October 19, 2021, there are currently no Covid-19 cases among inmates at RJD and 85% of inmates are vaccinated.  (ECF No. 30 at 1-3.)

To satisfy the subjective prong of an Eighth Amendment claim, Plaintiff must show Defendants knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  As Plaintiff correctly points out in his Opposition (*see* ECF No. 29 at 7), Defendants can be found to be aware of a risk by the fact that the risk was obvious.  *See Farmer*, 511 U.S. at 842 (noting that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."); *Berg v. Kincheloe*, 794 F.2d 457, 460-61 (9th Cir. 1986) (allegation that guard ignored obvious risk to prisoner's safety stated a prima facie cause of action under the Eighth and Fourteenth Amendments); *Plata*, 445 F.Supp.3d at 559 ("[N]o one questions that [the Covid-19 pandemic] poses a substantial risk of serious harm" to prisoners.)

Plaintiff alleges in the FAC that Defendant Warden Pollard personally signed the response to his CDCR-602 inmate grievance log no. 73173, which is attached to the FAC as Exhibit A, in which Defendant Pollard stated that inmate Washington had been medically cleared before he was housed with Plaintiff (*see* ECF No. 29 at 17), and claims that Defendant Pollard's failure to address the concerns therein, in particular his double-celling with an infected inmate, caused Plaintiff to suffer his injuries and caused the Covid-19 outbreak at RJD.  (*Id*. at 4-9.)  Plaintiff argues in his Opposition that Defendant Pollard's response that inmate Washington was medically cleared before being placed in Plaintiff's cell is false because it contradicts what he was told by Nurse Feller-Sazon and was done in order to conceal the risks associate with the failure of RJD staff to follow safety protocols. (ECF No. 29 at 5-6.)  The Court is not permitted on a Rule 12(b)(6) motion to consider factual allegations in Plaintiff's Opposition which are not contained in the FAC, *see*

*Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 (9th Cir. 1998), such as the allegation Plaintiff was told by Nurse Feller-Sazon that inmate Washington was not medically cleared to have been placed in his cell, although the Court notes that Plaintiff indicates he intends to amend the FAC with respect to this claim.  (ECF No. 29 at 10.)  However, even without that allegation, Plaintiff alleges that Defendant Pollard's January 26, 2021, personal response to his December 29, 2020, grievance shows that Pollard knew of Plaintiff's contention in that grievance that Covid-19 safety guidelines were not being followed in his housing unit, including that guards were "intentionally" housing inmates who were known to be infected with Covid-19 with inmates who were not infected, and that it happened to Plaintiff.  (*See* ECF No. 29 at 18-19.)  Plaintiff has plausibly alleged Defendant Pollard was aware Plaintiff faced an ongoing risk to his health arising from RJD officials failing to follow the safety protocols.  Although Pollard's response indicates that he investigated and determined that RJD medical records indicated that inmate Washington was medically cleared and housed appropriately on that occasion, Plaintiff alleges that the housing officers "were well aware" that Washington "was not medically cleared" and should not have been housed in his cell but they "intentionally" disregarded their "responsibility" as RJD employees not to house infected and non-infected inmates in the same cell.  (*Id.* at 19.)  Such evidentiary conflicts, including whether Pollard's reliance on the Strategic Offender Management System to review the inmates' Medical Classification Chronos was sufficient to reasonably determine there was no ongoing danger to Plaintiff in light of the allegation that RJD officers knew inmate Washington was not medically cleared and were intentionally disregarding safety protocols, are not properly resolved on a Rule 12(b)(6) motion to dismiss.  *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."); *Mayo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994) (when ruling on a Rule 12(b)(6) motion, the court must accept as true all allegations of material facts alleged in the complaint and construe all inferences in the light most favorable to the non-moving party).

With respect to the second prong of an Eighth Amendment violation, that Defendant Pollard, knowing of such a risk deliberately disregarded it, Plaintiff alleges Pollard had a duty to act to require RJD personnel to follow the safety protocols, and, knowing that Plaintiff faced an ongoing risk to his health from that ongoing failure, refused to act to stop the alleged non-compliance with the safety protocols and merely used medical records to determine that inmate Washington had been appropriately housed on that one occasion. Those allegations are in addition to the overall allegations in the FAC that Defendant Pollard, as Warden of RJD, has breached and continues to breach his duty to ensure compliance with the safety protocols at RJD which have caused or exacerbated Plaintiff's injuries and resulted in an infected inmate being placed in his cell. They are sufficient to plausibly allege Defendant was aware of and deliberately disregarded a substantial risk to Plaintiff's health and safety from an ongoing alleged failure of RJD personnel to follow safety protocols. These allegations go beyond what Defendants contend are mere allegations of failing to follow protocols and failing to respond to grievances. Rather, the FAC plausibly alleges Warden Pollard was personally aware of a substantial risk of serious harm to Plaintiff arising from RJD personnel intentionally refusing to follow safety guidelines, including knowingly placing infected inmates in cells with uninfected inmates, particularly after inmates in Plaintiff's housing unit allegedly began dying as a result of that failure, and personally responded to the grievance that Plaintiff was placed in a cell with an infected inmate as a result of that deliberate failure by stating that Plaintiff had not been placed in any danger because institutional medical records showed the inmate had been medically cleared, in an effort to conceal the failure to follow the safety protocols and the risks associated therewith. *See Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) (review of inmate grievance by warden and associate warden was sufficient to show they were aware that inmate had a serious medical need for surgery and *failed to act* to prevent further harm) (emphasis added), overruled on other grounds, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). The motion to dismiss Defendant RJD Warden Pollard on the basis that the FAC does not plausibly allege an Eighth Amendment violation is **DENIED**.

With respect to Defendants RJD Chief Deputy Warden Buckel, RJD Associate Warden Phillips and RJD Facility Captain Garcia, there are no factual allegations which plausibly allege they actually drew an inference that Plaintiff faced a substantial risk to his health and safety and were deliberately indifferent to that risk.  Rather, Plaintiff's only allegation against these Defendants is that they were responsible for handling his CDCR 602 inmate grievances and failed in their duty to do so properly, including failing to interview him.  (ECF No. 19 at 4-5.)  The pleading standard required to overcome a Rule 12(b)(6) motion to dismiss "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formalistic recitation of the elements of a cause of action'" or "tenders 'naked assertion(s)' devoid of 'further factual enhancement,'" does not survive a Rule 12(b)(6) motion to dismiss.  *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555.

Unlike the allegation that Warden Pollard personally responded to the grievance with a false assertion that Plaintiff had not been placed in any danger to conceal the risk associated with the failure to follow the safety protocols, Plaintiff's allegations against Defendants Buckel, Phillips and Garcia are that they failed to review his grievances at all and were therefore apparently unaware of their contents.  Even assuming the truth of the allegations that Defendants Buckel, Phillips and Garcia had a duty to review and respond to his grievances, there are no factual allegations in the FAC which plausibly suggest that by simply reviewing the grievances they actually drew an inference Plaintiff faced a substantial risk to his safety, unlike Warden Pollard who is alleged to have assumed the responsibility of reviewing and responding to the grievance and personally responded in order to conceal the failure to follow safety protocols.  *See e.g. May v. Williams*, 10cv576-GMN-LRL, 2012 WL 1155390, at *3 (D. Nev. Apr. 4, 2012) ("Holding a prison official personally responsible for damages simply because he is familiar with a prisoner's circumstances through direct communications with the prisoner and through communications with his subordinates is such a broad theory of liability that it is

inconsistent with the personal responsibility requirement for assessing damages against public officials in a 42 U.S.C. § 1983 suit."); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.")

Accordingly, the motion to dismiss Defendants RJD Chief Deputy Warden Buckel and RJD Associate Warden Phillips, and RJD Facility Captain Garcia for failure to state a claim is **GRANTED** and these Defendants are **DISMISSED**.  Because it is not absolutely clear Plaintiff cannot cure the pleading defects against these Defendants, the dismissal is without prejudice and with leave to amend.  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

With respect to Defendants RJD Correctional Sergeant Hampton and RJD Correctional Officers Lachuga and Sanchez, Plaintiff alleges that on July 20, 2021, Defendant Lachuga came to his cell to advise him he was being rehoused in A1-108 in quarantine.  (ECF No. 19 at 10.)  When Plaintiff refused to be moved because he was not Covid-19 positive and did not exhibit any symptoms, Defendant Lachuga told him he would be placed in AdSeg and issued an RVR if he refused, an action Plaintiff states was "authorized" by Defendant Hampton.  (*Id*.)  While Plaintiff was moving to cell A1-108 he confronted Hampton about "being bullied, threatened, and forced to rehouse in conditions which increase the risk of Covid-19 infection."  (*Id*.)  Defendant Hampton told Plaintiff he would be tested the next day and if he tested negative he would be moved back, and he tested negative the next day.  (*Id*.)  Plaintiff alleges he complained to Defendants Sanchez and Lachuga that the walls in cell A1-108 "were peppered with dried substances and fluids

from previous Covid-19 positive prisoners held [there] in quarantine," but they ignored those concerns as well as his request to return to cell A2-147 as promised.  (*Id*. at 10-11.)

Defendants contend it is unclear from the FAC whether Plaintiff stayed in quarantine or was immediately returned to his regular cell after he complained about the conditions in the quarantine cell, that the allegations that Defendants Sanchez and Lachuga ignored his complaints is insufficient to state a claim against them, particularly since there are no allegations Plaintiff suffered any harm as a result of being placed in the quarantine cell, and the allegation that Defendant Hampton asked Plaintiff to quarantine after he was exposed to an inmate who had tested positive was taken to ensure Plaintiff's safety and not in deliberate disregard to his safety.  (ECF No. 21 at 14.)

The FAC fails to plausibly allege that Defendant Lachuga, by advising Plaintiff he was going to be moved to a quarantine cell and ignoring Plaintiff when he told him that Defendant Hampton had promised he would be moved back to his cell, became aware of and deliberately disregarded a substantial risk to Plaintiff's health or safety.  Even assuming the risk to Plaintiff's health and safety should have been obvious to Defendant Lachuga because of the conditions in the quarantine cell, there are no allegations which plausibly suggest Lachuga had the authority to prevent Plaintiff's removal from his cell, remove Plaintiff from the quarantine cell, or return him to his own cell.  *See Hines v. Youseff*, 914 F.3d 1218, 1236 (9th Cir. 2019) (finding that defendant who had no discretion or authority relating to the alleged conduct could not be held liable under the Eighth Amendment because "[a]n official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'"), quoting *Starr*, 652 F.3d at 1205.  The FAC fails to plausibly allege Defendant Hampton knew of and deliberately disregarded a substantial risk to Plaintiff's health and safety by "authorizing" Defendant Lachuga's actions or in asking Plaintiff to quarantine after he had been exposed to a Covid-19 positive inmate.  The same is true as to Defendant Sanchez for ignoring Plaintiff when Plaintiff told Sanchez that Hampton had promised to return Plaintiff to his cell the next day, particularly since there are no allegations in the FAC whether and when Plaintiff was returned to his cell.

Finally, Plaintiff alleges Defendant RJD Correctional Officer Navarro brought inmate Washington to his cell when Washington tested positive for Covid-19, and that Navarro threatened to move Plaintiff to AdSeg and issue him an RVR if he did not agree to double cell with Washington even though Washington told Defendant Navarro he was infected with the virus.  (ECF No. 19 at 7-8.)  Although there is no indication Defendant Navarro has been served with the summons and FAC and has not made an appearance, the other Defendants argue in their motion to dismiss that simply housing Washington in Plaintiff's cell for one night coupled with the undisputed evidence Plaintiff did not contract Covid-19 demonstrates it was the type of isolated incident which caused no harm, as opposed to a policy or ongoing practice, and therefore fails to state an Eighth Amendment claim against Navarro.[4]  (ECF No. 21 at 14.)

There are no allegations that Defendant Navarro was aware Plaintiff was not infected at the time he moved Washington into Plaintiff's cell or that Plaintiff made Navarro aware he should not be housed with an inmate who tested positive, and therefore no allegation that Navarro was aware of and deliberately disregarded a substantial risk to Plaintiff's health.  Neither are there any allegations Navarro had the authority to decline to place Washington in Plaintiff's cell.  *See Hines*, 914 F.3d at 1236 (finding that defendant who had no discretion or authority relating to the alleged conduct could not be held liable under the Eighth Amendment because "[a]n official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'"), quoting *Starr*, 652 F.3d at 1205.

Accordingly, the motion to dismiss for failure to state a claim by Defendants RJD Correctional Sergeant Hampton and RJD Correctional Officers Lachuga and Sanchez is **GRANTED** and these Defendants are **DISMISSED**.  Defendant Navarro is **DISMISSED**

---

[4] Although Defendant Navarro has not joined the motion to dismiss, the outcome would be the same if he had, as 28 U.S.C. §§ 1915(e)(2) & 1915A(b) require *sua sponte* dismissal of a prisoner's IFP complaint, or any portion of it, which fails to state a claim under Rule 12(b)(6) standards.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  The dismissal is without prejudice and with leave to amend.  *Rosati*, 791 F.3d at 1039.

## IV.  CONCLUSION AND ORDER

Based on the foregoing, the Court **GRANTS** in part Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and **DISMISSES** all claims against all Defendants in the First Amended Complaint except Plaintiff's Eighth Amendment claim against Defendant RJD Warden Pollard.  The Court **DENIES** in part Defendants' motion to dismiss Plaintiff's Eighth Amendment claim against Defendant Pollard.

In light of Plaintiff's pro se status, Plaintiff is **GRANTED** leave to file a Second Amended Complaint within thirty (30) days from the date this Order is filed if he wishes to do so.  The Second Amended Complaint must be complete by itself without reference to any original pleading.  Defendants not named and any claim not re-alleged will be considered waived.  *See* S.D. Cal. Civ.L.R. 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")

If Plaintiff does not timely file a Second Amended Complaint, this action will proceed with the only remaining claim in this action against the only remaining Defendant, Plaintiff's Eighth Amendment claim against Defendant Pollard, and Defendant Pollard's Answer to the First Amended Complaint will be due sixty (60) days from the date of this Order.

**IT IS SO ORDERED**.

Dated:  January 19, 2022

_____
Hon. Cathy Ann Bencivengo
United States District Judge

24